UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CANDISS TWEEDIE, on behalf of
herself and on behalf of all others
similarly situated,

        Plaintiff,

v.                                                      Case No. 8:19-cv-1827-TPB-AEP

WASTE PRO OF FLORIDA, INC., *et al.*,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Candiss Tweedie ("Tweedie" or "Plaintiff") brings this action against Defendants Waste Pro of Florida, Inc. ("Waste Pro Florida") and Waste Pro USA, Inc. ("Waste Pro USA") (collectively, "Waste Pro" or "Defendants"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, on behalf of herself and a putative class (Doc. 1).  Currently before the court is Tweedie's Unopposed Motion for Preliminary Approval of Settlement and Notice to Settlement Class (Doc. 55).  For the reasons set forth below, it is recommended that Tweedie's motion (Doc. 55) be granted as set forth herein.[1]

### I.    Background

Tweedie formerly worked for Waste Pro Florida, which provides solid waste collection, recycling, and disposal services to residential and commercial customers

---

[1] The district judge referred the matter for issuance of a report and recommendation (Doc. 56).  *See* 28 U.S.C. § 636.

in the State of Florida and consists of one of many affiliated entities providing similar services under the "Waste Pro" umbrella in the United States.  Waste Pro USA in turn performs administrative services for all the related Waste Pro entities, including procuring background checks and consumer reports on prospective employees, employees, and former employees at all Waste Pro entities.  According to Tweedie, Waste Pro USA routinely obtained and used information in consumer reports to conduct background checks on prospective employees, employees, and former employees, including her and the putative class members.

In doing so, Tweedie alleges that Defendants willfully violated the FCRA, specifically 15 U.S.C. § 1681b(b)(2)(A)(i) and (ii).  Those provisions provide:

> **(2)    Disclosure to consumer**
>
> **(A)    In general**
>
> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--
>
>> (i)      a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>>
>> (ii)     the consumer has authorized in writing (which authorization must be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A)(i) & (ii) (emphasis in original).  Tweedie asserts that Defendants violated these provisions by procuring consumer reports on her and

other putative class members for employment purposes, without first making proper stand-alone disclosures in the required format and without lawful authorization.

Primarily, prior to obtaining a copy of a consumer report for a prospective employee, employee, or former employee, Defendants were required to disclose to prospective employees, employees, and former employees, in a stand-alone document that consisted solely of the disclosure, that they may obtain a consumer report on that prospective employee, employee, or former employee for employment purposes. Tweedie alleges that the disclosure and authorization form provided by Defendants contained extraneous information, causing confusion and otherwise distracting from the disclosure. As a result, Tweedie asserts that Defendants failed to provide a proper disclosure under the FCRA. Given the failure to provide the proper disclosure, Tweedie alleges that Defendants failed to obtain lawful authorizations from her and other putative class members, further violating the FCRA. Tweedie contends that such acts by Defendants constituted willful acts because (1) Defendants knew they were required to provide a stand-alone disclosure prior to obtaining and using consumer reports on the putative class members; (2) Defendants are large and sophisticated employers/entities with access to legal advice through their own attorneys, with no evidence indicating they determined that their own conduct was lawful; (3) Defendants knew or had reason to know that their conduct was inconsistent with published FCRA guidance interpreting the FCRA, caselaw, and the plain language of the statute; and (4) Defendants

voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

Tweedie initiated this action on behalf of herself and the putative class, alleging Defendants committed the foregoing violations of the FCRA and thus seeking an award of statutory damages, attorney's fees, and costs on behalf of herself and the putative class (Doc. 1). More specifically, Tweedie asserted claims for (1) the failure to make proper disclosure in violation of 15 U.S.C. § 1681b(b)(2)(A)(i) (Count I), and (2) the failure to obtain proper authorization in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii) (Count II). Tweedie initially identified a "Background Check Class" consisting of:

> All employees and job applicants in the United States who were subject of a consumer report obtained for employment purposes by Waste Pro USA, Inc., or its affiliates, who did not receive a lawful disclosure as required by 15 U.S.C. § 1681b(b)(2)(A) within two years of the filing of this complaint through the date of final judgment in this action.

(Doc. 1, ¶¶8, 51).

In response, Defendants moved to dismiss Tweedie's claims (Doc. 9), which the district judge denied (Doc. 28). Following the denial of Defendants' motion to dismiss, Tweedie moved for class certification (Doc. 38). The parties then mediated the matter, during which they reached a settlement (Doc. 53) and subsequently entered into the Joint Stipulation of Class Settlement ("Stipulation of Settlement") (Doc. 55, Ex. A). In pertinent part, and subject to approval by the court, the Stipulation of Settlement provides for settlement under the following terms:

(1)  Certification of a class consisting of all natural persons residing within the United States and its Territories with respect to whom, within the two years preceding the filing of this action and extending through the resolution of this action, Defendants procured or caused to be procured a consumer report for employment purposes based on the disclosure form used for Plaintiff;

(2)  Defendants agree to establish a Gross Settlement Fund in the amount of $499,000;

(3)  Every Settlement Class Member who timely submits a proper claim form will receive a settlement payment of $100, not subject to further reduction unless claims exceed the amount of the Net Settlement Fund;

(4)  Any unclaimed funds and any uncashed settlement compensation after the expiration of the 60-day period for negotiating checks shall automatically revert back to Defendants;

(5)  Payment from the Settlement Fund of an attorney's fees award not to exceed one third of the Settlement Fund, if approved by the court, plus reimbursement from the Settlement Fund for litigation-related costs and expenses;

(6)  Payment from the Settlement Fund to Plaintiff a sum of $7,500 as consideration for execution of a General Release of all claims; and

(7)  Notice and administration by a Settlement Administrator deducted from the Settlement Fund.

(Doc. 55, at 2-3 & Ex. A).

## II.    Preliminary Class Certification

By the instant motion (Doc. 55), the parties seek preliminary certification of the class, preliminary approval of the Stipulation of Settlement, approval of the notice to class members, and entry of a schedule of deadlines.  More specifically, pursuant to Rule 23, the parties request that the court enter an order (1) preliminarily approving the Stipulation of Settlement that appoints Tweedie as Class

Representative and her attorney as Class Counsel; (2) approving the form of class Notice attached to the Stipulation of Settlement and its dissemination to the Settlement Class by first-class U.S. mail to the last-known address of class members; and (3) setting dates for notice, opt-outs, objections, filing a claim, motions for final approval, and a fairness hearing (Doc. 55).  Notwithstanding the parties' failure to address any of the Rule 23(a) or (b) factors necessary for determination of whether certification of a class is appropriate for purposes of preliminary approval of the Stipulation of Settlement, the court maintains an independent duty to consider the Rule 23 factors in considering whether the case meets the requirements for class certification.  *See In re Checking Account Overdraft Litigation*, 275 F.R.D. 654, 659 (S.D. Fla. 2011) ("In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e.*, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial.") (citations omitted); *Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-35-T-23MAP, 2009 WL 4015573, at *2 (M.D. Fla. Nov. 19, 2009) (indicating that the plaintiff bears the burden of establishing that each requirement of Rule 23(a) and at least one requirement of Rule 23(b) is satisfied when determining if a class should be certified solely for purposes of settlement); *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 676 (S.D. Fla. 2006) ("Although the parties have consented to certification of a settlement class in this case, the Court must

6

independently determine whether this case meets the requirements for class certification under Federal Rule of Civil Procedure 23(a) and 23(b), even if the certification is only for settlement purposes.") (citation omitted).

District courts maintain broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992) (citation omitted). Since the class action provides an exception to the general rule that litigation be conducted by and on behalf of the individual named parties only, to justify certification of a class, a class representative must be a member of the class and possess the same interest and suffer the same harm as the class members. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (citations omitted). The advocate of the class thus carries the initial burden of proof to establish the propriety of class certification. *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) (citation omitted), *cert denied sub nom.*, *Zeirei Agudath Israel Bookstore v. Avis Rent-A-Car System, Inc.*, 532 U.S. 919 (2001).

In determining whether class certification is appropriate, "Rule 23 establishes the legal roadmap courts must follow." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). Namely, Rule 23(a) requires the moving party to demonstrate that:

>(1)   the class is so numerous that joinder of all members is impracticable;
>
>(2)   there are questions of law or fact common to the class;
>
>(3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).  "Failure to establish any one of these four factors and at least one of the alternative requirements of Rule 23(b) precludes class certification."  *Valley Drug*, 350 F.3d at 1188 (citation omitted); *see Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1282 (11th Cir. 2011) ("To satisfy Rule 23, the putative class must meet each of the four requirements specified in 23(a), as well as at least one of the three requirements set forth in 23(b).") (citation omitted).

Accordingly, if a court determines that the moving party established the numerosity, commonality, typicality, and adequacy-of-representation requirements of Rule 23(a), the court then determines whether the moving party established the requirements of one of three possible categories under Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (citations omitted).  In this instance, Tweedie seeks certification of the class pursuant to Rule 23(b)(3) (*see* Doc. 38, at 13-17).  Under Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied and if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

In determining the propriety of a class action, the question is whether the moving party meets the requirements of Rule 23, not whether the moving party states a cause of action or will prevail on the merits. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (citation omitted). Though a district court should not reach the merits of a claim when considering the propriety of class certification, "this principle should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements." *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984) (internal citation and omitted). Instead, the district court can consider the merits of the moving party's claim at the class certification stage to the degree necessary to determine whether the moving party satisfied the requirements of Rule 23. *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006) (citations omitted); *see Dukes*, 564 U.S. at 350-51 (stating that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, ... and that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. ... Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. The class determination

9

generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.") (internal citations, internal quotations, internal alterations, and citations omitted).

### A.    Standing

Prior to the certification of a class, and before undertaking any formal typicality or commonality review, "the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *see Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (noting that, to certify a class action, the named plaintiffs must have standing, and the putative class must meet all of the requirements of Rule 23(a) in addition to at least one of the requirements in Rule 23(b)) (citation omitted).  As indicated, Tweedie alleges that she worked for Waste Pro and that Waste Pro obtained consumer reports for prospective employees, employees, and former employees, including her. According to Tweedie, Waste Pro procured a consumer report for her and the putative class members without the proper disclosure or authorization required by the FCRA.  Such allegations establish a cognizable, particularized, and personal injury for purposes of Article III standing.

### B.    Rule 23(a)

The question now turns to whether Tweedie can establish the requirements for class certification.  As noted above, under Rule 23(a), one or more members of a class may sue as representative parties on behalf of all members only if the movant

establishes the numerosity, commonality, typicality, and adequacy-of-representation requirements.  Fed. R. Civ. P. 23(a)(1)-(4).

### i.      Numerosity

Initially, Tweedie must demonstrate that the class is so numerous that joinder of all members would prove impracticable.  Fed. R. Civ. P. 23(a)(1).  To establish numerosity, the moving party typically must show either some evidence or a reasonable estimate of the number of purported class members.  *Kuehn v. Cadle Co., Inc.*, 245 F.R.D. 545, 548 (M.D. Fla. 2007) (citation omitted); *cf. Vega*, 564 F.3d at 1267 (noting that, while mere allegations of numerosity are insufficient, a plaintiff need not show the precise number of members in the class).  Though no fixed numerosity rule exists, courts generally determine less than 21 members of a proposed class is inadequate to establish numerosity and more than 40 members of a proposed class is adequate to establish numerosity, with numbers between varying based upon other factors.  *See, e.g., Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *see Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (concluding that a district court did not abuse its discretion in finding that the numerosity requirement had been met where a plaintiff identified at least 31 individual class members).  In determining numerosity, a district court may consider such factors as the size of the class, the ease of identifying the class members and determining the addresses of class members, the facility of effecting service upon class members if joined, and the geographic dispersion of class members.  *Kilgo*, 789 F.2d at 878.  Here, Defendants represent that there are

approximately 6,455 members of the Settlement Class (Doc. 55-1, ¶34). Given the large number of class members and Defendants' ability to identify the putative class members, Tweedie easily established numerosity.

### ii.   Commonality

Tweedie must next establish commonality, or that there exists questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Commonality pertains to the group characteristics of the class as a whole, whereas typicality pertains to the individual characteristics of the named plaintiff in relation to the class. *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (citation omitted). To meet the commonality requirement, the moving party must demonstrate that the class action involves issues susceptible to class-wide proof. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (citation omitted). Essentially, the moving party must show that the determination of the truth or falsity of a common contention will resolve an issue that is central to the validity of each of the claims in one stroke. *Dukes*, 564 U.S. at 350. Commonality therefore requires "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams*, 568 F.3d at 1355 (citation and internal quotation marks omitted). Notably, "Rule 23 does not require that all the questions of law and fact raised by the dispute be common." *Cox*, 784 F.2d at 1557 (citations omitted). In this instance, common questions of fact and law exist regarding such issues as (1) whether the disclosure and authorization contained in Defendants' background check forms satisfy the notice and authorization requirements under the FCRA, and

(2) whether Defendants acted negligently or willfully in their failure to satisfy the requirements under the FCRA.  Those issues form the basis for Counts I and II and are common to all members of the putative class.  Accordingly, Tweedie established commonality.

### iii.   Typicality

The next requirement Tweedie must demonstrate is that of typicality. Though the issues of commonality and typicality require separate inquiries, the proof required for each tends to merge.  *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir. 1996) (citation and quotation omitted).  As the Eleventh Circuit explained, typicality involves the following:

> A class may be certified only if the claims or defenses of the representative parties are typical of the claims or defenses of the class. The claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.  A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). The typicality requirement may be satisfied despite substantial factual differences when there is a strong similarity of legal theories.

*Williams*, 568 F.3d at 1356-57 (internal citations and internal marks omitted); *see Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.  Typicality, however, does not require identical claims or defenses.  A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other

members of the class").   Typicality is satisfied because Tweedie, like each class member, was subject to the same or similar disclosure and authorization forms, and each Settlement Class Member's claims are based upon the same legal theory and same set of facts as Tweedie's claim during the same time period.   Given that the claims of the Settlement Class and Tweedie's claims are based on the same pattern or practice and the same legal theory, Tweedie established typicality.

### iv.   Adequacy of Representation

Finally, Tweedie must satisfy the adequacy-of-representation requirement, which requires the representative party in a class action to fairly and adequately protect the interests of those he or she purports to represent.  Fed. R. Civ. P. 23(a)(4); *Valley Drug*, 350 F.3d at 1189.   In considering this requirement, the moving party must demonstrate both (1) that the movant's interests and that of his or her counsel are not antagonistic to or in substantial conflict with those of the rest of the class and (2) that the movant and his or her counsel are generally able to adequately prosecute the action and conduct the proposed litigation.   *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (citation omitted); *see Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987).   Furthermore, in appointing class counsel, a district court must consider (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the

14

resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Based on the record before the court, Tweedie adequately represents the interests of the class.  Tweedie has actively participated in the litigation, including sitting for a deposition (Doc. 35) and pursuing claims on behalf of herself and the class despite an offer of judgment from Defendants in excess of the maximum statutory damages (*see* Doc. 35, at 62 & Ex. 7).  The undersigned cannot ascertain any interests on behalf of Tweedie that are antagonistic to or in substantial conflict with those of the rest of the class.[2]  Further, by reaching a class-wide settlement of the claims in this action, Tweedie demonstrated that she is generally adequate to prosecute the action and conduct the proposed litigation.

With respect to Class Counsel, Tweedie seeks to appoint Attorney Marc R. Edelman.  Tweedie established that Edelman can adequately represent and protect the interests of the class and conduct the proposed litigation given that he has already drafted all pertinent filings and negotiated the settlement on behalf of the

---

[2]   While the Stipulation of Settlement provides for a $7,500 payment to Tweedie as consideration for execution of a General Release of all claims against Defendants and an agreement that Tweedie will not be rehired, the undersigned does not find such provision at odds with the interests of the class (*see* Doc. 55, ¶¶24, 57).  Notably, that the Eleventh Circuit recently determined that "incentive awards" for class representatives equate to part salary and part bounty, which is prohibited by prior Supreme Court precedent.  *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1255-61 (11th Cir. 2020).  Whether the payment to Tweedie for the General Release constitutes a thinly veiled attempt at an incentive award is certainly a concern.  Given that this matter arises in the employment context and that the parties could have independently negotiated the General Release regarding any employment claims and potential request to rehire that Tweedie maintained separate and apart from the FCRA claims at issue for the class, however, the undersigned recommends approving the provision in the Stipulation of Settlement providing for the $7,500 payment to Tweedie as consideration for execution of the General Release.

putative class; he possesses extensive experience handling class-action lawsuits, including class-action lawsuits involving the FCRA (Doc. 38, Ex. B); and he continues to actively participate in the matter.  As such, Tweedie demonstrated that, considering those factors, Edelman meets the adequacy-of-representation requirement.  In sum, Tweedie demonstrated that both she and Edelman will adequately represent the interests of the class.  Accordingly, Tweedie established each of the Rule 23(a) factors.

### C.    Rule 23(b)

Having established the requirements under Rule 23(a), Tweedie now must show that the putative class also meets the requirements under Rule 23(b)(3).  For purposes of preliminary approval, the putative class satisfies the requirements regarding predominance of common issues and superiority of the class action to other means of litigation.  *See* Fed. R. Civ. P. 23(b)(3).

### i.    Predominance

To satisfy the predominance requirement, the moving party must demonstrate that the issues in the class action subject to generalized proof, and therefore applicable to the class as a whole, predominate over the issues subject only to individualized proof.  *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (citations omitted).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Windsor*, 521 U.S. at 623 (citation omitted).  The predominance inquiry thus focuses upon the legal or factual questions that qualify each class

member's case as a genuine controversy and, therefore, is a far more demanding requirement than the commonality requirement under Rule 23(a). *Jackson*, 130 F.3d at 1005. Indeed, predominance requires more than just the presence of common issues. The common issues must actually outweigh and predominate over any individualized issues involved in the litigation. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 518 (S.D. Fla. 2013).

In this instance, Tweedie contends that common questions of law and fact predominate, as the central common issues involve whether Defendants' FCRA forms satisfy the notice and authorization requirements under the FCRA and, if not, whether Defendants' failure to comply with the FCRA was willful. *See Gross v. Advanced Disposal Servs., Inc.*, Case No. 8:17-cv-1920-T-36TGW, 2018 WL 8415876, at *7 (M.D. Fla. Dec. 10, 2018) (finding the central common issues for purposes of predominance in a case involving FCRA claims included whether the defendant's form satisfied the notice and authorization requirements and, if not, whether the defendant's failure to comply with the FCRA was willful). Each of these inquiries can be determined uniformly for members of the settlement class and predominate over any issues subject only to individualized proof. Accordingly, Tweedie established predominance.

### ii.    Superiority

Tweedie must also establish that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The superiority analysis focuses upon the relative advantages of

proceeding as a class action suit over any other forms of litigation that might be realistically available to a moving party. *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010). In determining the superiority of the class action, the court may consider (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, given the large number of purported class members, the similarity of the claims of all class members, and the relatively small potential recovery in individual suits, proceeding as a class action lawsuit is superior over any other forms of litigation. Furthermore, nothing indicates that any class members maintain an interest in individually controlling the prosecution or defense of separate actions or that any class members have in fact already initiated separate actions. Moreover, handling this matter as a class action would prove less difficult than handling thousands of individual lawsuits. Such considerations demonstrate the superiority of proceeding as a class action and thus weigh in favor of proceeding as a class action. Based on these considerations, Tweedie established that proceeding as a class action is superior to other methods available to fairly and efficiently adjudicate this controversy. Tweedie thus established both the Rule 23(a) and (b) requirements for preliminary approval of the class, and it is recommended that the class be

certified for purposes of preliminary approval of the Stipulation of Settlement, as described in greater detail below.

### III.   Preliminary Settlement Approval

#### A.   Rule 23(e)

As noted, following execution of the Stipulation of Settlement, Tweedie and Defendants now seek the court's preliminary approval of the class, appointment of Tweedie as Class Representative, appointment of Class Counsel, issuance of the Notice to the class, and the scheduling of dates for notice, opt-outs, objections, filing a claim, motions for final approval, and a fairness hearing.  Given the determination that proceeding as a class action for purposes of settlement is warranted, the inquiry turns to whether the Stipulation of Settlement should be approved.  "Public policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (citation omitted); *see Jairam v. Colourpop Cosmetics, LLC*, CASE NO. 19-CV-62438-RAR, 2020 WL 5848620, at *3 (S.D. Fla. Oct. 1, 2020) ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements.").  Under Rule 23(e), the claims, issues, or defenses of a certified class may be settled with the court's approval, applying the following procedures:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if the parties show that the court will likely be able to approve the proposal and certify the class for purposes of judgment on the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under subdivision (e), and the objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, along with stating with specificity the grounds for the objection.

Fed. R. Civ. P. 23(e)(1)-(5).

Having established that preliminary certification of the class is warranted, Tweedie also established that preliminary approval of the settlement agreement is similarly warranted.  To approve a class action settlement, a district court must determine that the settlement is fair, adequate, and reasonable and is not the result of collusion between the parties.  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (quotation and citation omitted); *see Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) ("At the preliminary-approval step, the Court is required to make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.") (internal quotation and citation omitted).  In making such determination, a district court should consider the following factors: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which

a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011); *see Bennett*, 737 F.2d at 986 (listing the factors to be considered as (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved) (citations omitted). These factors are neither determinative nor exhaustive, and a district court may consider such other relevant factors as (1) an unjustifiably burdensome claims procedure; (2) unduly preferential treatment of the class representative; (3) the terms of settlement in similar cases; (4) an unreasonably high award of attorney's fees to prevailing class counsel; and (5) impermissibly broad releases of liability. *Palmer v. Dynamic Recovery Sol., LLC*, Case No. 6:15-cv-59-Orl-40KRS, 2016 WL 2348704, at *2 (M.D. Fla. May 4, 2016) (citations omitted).

Preliminary approval of a class settlement simply allows notice to issue to the class and for the class members to either object or opt out of the settlement. *Pierre-Val v. Buccaneers Ltd. P'ship.*, No. 8:14-CV-01182-CEH-EAJ, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015). Accordingly, if a proposed settlement is within the range of possible approval, or if probable cause exists to notify the class of the

proposed settlement, such settlement should be preliminarily approved. *Fresco*, 2007 WL 2330895, at *4 (citations omitted). Notably, "[a]lthough class action settlements should be reviewed with deference to the strong judicial policy favoring settlement, the court must not approve a settlement merely because the parties agree to its terms." *Palmer*, 2016 WL 2348704, at *3 (citations omitted). With respect to precertification settlement, it is especially important since "the parties' speedy and seamless resolution of their dispute should prompt the court to consider whether the proposed settlement represents a bona fide end to the adversarial process or the collusive exploitation of the class action mechanism to the detriment of absent class members." *Id.* (citations omitted).

As indicated, Tweedie asserts claims for violations of the FCRA for consumer reports obtained by Defendants (Doc. 1). Although Defendants deny any allegations of wrongdoing, liability, and damages, and further deny that litigation would be appropriate for class treatment, Tweedie and Defendants entered into the Stipulation of Settlement to resolve all claims to avoid the expense, inconvenience, and inherent risk involved with litigation as well as to prevent the continued disruption of Defendants' business operations. In effecting this resolution, the Stipulation of Settlement provides for a maximum Settlement Fund of $499,000 intended to be classified as a "qualified settlement fund" under the applicable U.S. Treasury Regulations (Doc. 55, Ex. A, ¶¶37-38). The Net Settlement Fund consists of the amount of money remaining after the Settlement Fund is reduced to account for the following:

> 1.  Class Settlement Administration Costs approved by the court, including an amount reserved to complete the Settlement Notice, an amount reserved to complete the Settlement Administration after the initial Settlement Payment checks are distributed, and an amount reserved to complete the Class Action Fairness Act ("CAFA") Notice;
>
> 2.  Reimbursement to Class Counsel for attorney's fees and incurred costs in an amount up to one-third of the Settlement Fund approved by the court; and
>
> 3.  Payment of $7,500 to Plaintiff as consideration for execution of a General Release.

(Doc. 55, Ex. A, ¶24).  Settlement Payments will be issued as individualized awards of $100 from the Net Settlement Fund made to the Settlement Class Members who timely submit a proper claim and otherwise comply with the terms of the Stipulation of Settlement, with a *pro rata* reduction applied if the number of claims multiplied by $100 exceeds the amount remaining in the Net Settlement Fund (Doc. 55, Ex. A, ¶¶39, 41).  In consideration for the Settlement Payments, the Settlement Class Members will release all claims alleged in the action and any known or unknown claims that were or could have been alleged based on the factual and legal theories alleged in the Complaint or that could have been asserted in this action, including all claims under the FCRA (Doc. 55, Ex. A, ¶28).  The amount of any unclaimed funds from the Net Settlement Fund and any uncashed settlement compensation after expiration of the period for negotiating checks used to distribute the Net Settlement Fund shall automatically revert back to Defendants (Doc. 55, Ex. A, ¶¶40-41).  With respect to fees and costs, Defendants will pay Class Counsel Attorney's Fees and Costs as awarded by the court, with Class Counsel seeking attorney's fees up to one-third of the Settlement Fund, or $166,167 (Doc. 55, Ex. A,

¶¶40, 43).  Class Settlement Administration Costs will be paid from the Settlement Fund, subject to court approval, and will include the costs of the Settlement Notice and sending of the notices required under the CAFA, not to exceed $20,000 in total (Doc. 55, Ex. A, ¶16, 44).

Essentially, the parties agreed to a claims-made settlement with full reversion to Defendants with a release of claims tailored solely to the claims addressed in this action.  Solely for purposes of preliminary approval, the terms of such settlement appear fair, adequate, and reasonable.  *See Fosbrink v. Area Wide Protective, Inc.*, Case No. 8:17-CV-01154-JSM-CPT, 2019 WL 11097489, at *2 (M.D. Fla. Jan. 22, 2019) (approving a claims-made class settlement awarding class members a gross *pro rata* share of $39 before fees and costs); *see Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 696 (S.D. Fla. 2014) ("There is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment.") (internal quotation and citation omitted).  Namely, the settlement appears fair, adequate, and reasonable when compared to other FCRA settlements, both in the total amount in the Settlement Fund, *i.e.* $499,999, and in the amount awarded to each class member, *i.e.*, $100.  *See, e.g., Fosbrink*, 2019 WL 11097489, at *3 (finding a gross *pro rata* share of $39 per class member, before class counsel's attorney's fees and costs, settlement administration costs, and service award to the plaintiff, to be fair and reasonable in a case involving FCRA claims relating to employment background checks); *Dukes v. Air Canada*, Case No. 8:18-cv-2176-T-17JSS, 2019 WL 8358700, at *2 (M.D. Fla. Sept. 6, 2019), *report and recommendation adopted*, 2019

WL 8358712 (M.D. Fla. Sept. 26, 2019) (preliminarily approving a class action settlement with a common fund of $100,000; a payment of $77.41 to class members before administration expenses and attorney's fees; and a payment of $41.61 to class members after administration expenses and attorney's fees in a case involving FCRA claims); *Gross*, Case No. 8:17-cv-1920-CEH-TGW (M.D. Fla. Feb. 26, 2020) (Doc. 102, ¶10) (finding payments of $90 to class members fair and reasonable in a case involving FCRA claims relating to employment background checks). Further, the amounts fall within the range of possible recovery, which also weighs in favor of finding the Stipulation of Settlement fair, adequate, and reasonable. *See Edwards v. Horizon Staffing, Inc.*, 1:13-cv-3002-WSD, 2015 WL 13283397, at *7 (N.D. Ga. Jan. 2, 2015) ("The range of possible recovery for Defendant's allegedly willful FCRA violations is $100 to $1,000.") (citing 15 U.S.C. § 1681n).

With respect to the potential request for expenses, costs, and attorney's fees, such request falls within the parameters of reasonable awards in the class action context, albeit on the high end of the spectrum. As the Eleventh Circuit stated, "'[a]ttorney's fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.'" *Faught*, 668 F.3d at 1242 (quoting *Camden I Condo Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)). In this context, courts generally consider fee requests reasonable where the requests fall between 20-30% of the claims. *Faught*, 668 F.3d at 1242 (citation omitted); *see Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 435 (11th Cir. 2012) (finding reasonable a fee award that constituted 25% of the common fund);

*Smith v. KFORCE Inc.*, Case No. 8:19-cv-02068-CEH-CPT, 2020 WL 7250603, at *2 (M.D. Fla. Dec. 9, 2020) (finding that one-third of the common fund, for which the class counsel would seek approval, was within the reasonable range for attorney's fees and costs upon consideration of preliminary approval of a class action settlement); *Edwards*, 2015 WL 13283397, at *7-11 (awarding 30% of the settlement funds for attorney's fees and costs as a reduction from the 37% requested and finding that 25% represents more of the normal percentage in a case involving settlement of FCRA class claims); *Atkinson v. Wal-Mart Stores, Inc.*, No. 8:08-CV-691-T-30TBM, 2011 WL 6846747, at *6-7 (M.D. Fla. Dec. 29, 2011) (finding an award of one-third of a common fund within the range common for class action fee and costs awards); *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1359 (S.D. Fla. 2011) (awarding 30% of a common fund in a case involving FCRA claims). Here, Tweedie intends to seek an award of attorney's fees in an amount not to exceed one-third of the Settlement Fund, or $166,167, and a separate award of other incurred costs. The requested amount for potential reimbursement of fees and costs is thus fair, adequate, and reasonable for purposes of preliminary approval.

As to the other factors, the parties agree that they each seek to avoid the complexity, expense, and duration of litigation and the appellate process anticipated in this action. Indeed, the parties can reasonably anticipate great expense to both parties if they are forced to litigate the issues present in this action. The Settlement Class Members also benefit from the potential receipt of a monetary payment

without the expense and risks associated with litigation, including the risk of a smaller or no award.  Furthermore, uncertainty remains on both sides as to whether the claims upon which Tweedie seeks to proceed are likely to succeed at trial. Tweedie and Defendants possess colorable arguments in support of and in opposition to the claims in this action, which makes settlement an attractive option for each.  With regard to the stage at which the settlement was reached, the Stipulation of Settlement was entered into after the submission and resolution of a motion to dismiss and the submission of a motion for class certification, so the parties both expended great time and effort before reaching a resolution.  Each side entered into the negotiations with a full understanding of the issues and potential pitfalls related to litigation of the claims and engaged in arm's-length negotiations before a court-approved mediator, thereby demonstrating that the settlement was not the product of fraud or collusion.  The timing of the settlement and the circumstances surrounding the settlement therefore do not weigh against preliminary approval.  Moreover, the Stipulation of Settlement does not delineate an unjustifiably burdensome claims procedure or unduly preferential treatment of Tweedie as Class Representative.  With respect to the factor pertaining to the opposition to the settlement, no such opposition currently exists as notice has not yet been provided to class members, so that factor also weighs in favor of preliminary approval.  Based on the foregoing factors, preliminary approval of the Stipulation of Settlement appears appropriate at this stage.

Accordingly, after consideration, the undersigned concludes that the Stipulation of Settlement represents a bona fide end to the adversarial process. The settlement falls within the range of possible approval and should therefore be preliminarily approved. In doing so, the court should do the following:

(1) preliminarily approve the following Settlement Class:

> All individuals as to whom, during the Covered Period, were subject to at least one consumer report (as defined in the FCRA) procured by Defendants (separately or jointly) between May 14, 2017 and June 4, 2020;[3]

(2) preliminarily appoint Tweedie as Class Representative; and

(3) preliminarily appoint Edelman as Class Counsel.

## B.   Notice

Following preliminary approval of a settlement, Rule 23 dictates that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where a class is certified under Rule 23(b)(3), albeit preliminarily for our purposes, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely include the following information in plain, easily understood language:

---

[3] The definition of the "Settlement Class" in the Notice differs slightly from the definition set forth in the Stipulation of Settlement (*compare* Doc. 55, Ex. A, ¶34, *with* Doc. 55, Ex. A, Ex. 2). The undersigned recommends that the Notice be amended to comport to the definition of the Settlement Class used in the Preliminary Approval Order, which the undersigned suggests should be that definition agreed upon by the parties, as set forth in the Stipulation of Settlement.

(1) the nature of the action;

(2) the definition of the class certified;

(3) the class claims, issues, or defenses;

(4) that a class member may enter an appearance through an attorney if the member so desires;

(5) that the court will exclude from the class any member who requests exclusion;

(6) the time and manner for requesting exclusion; and

(7) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Upon review, the Notice provided by Tweedie (Doc. 55, Ex. A, Ex. 2) satisfies these requirements and should be approved.[4]  Additionally, the manner in which the parties intend to provide notice to the class appears fair, adequate, and reasonable.  Namely, Tweedie and Defendants agree to provide notice by having the Settlement Administrator[5] mail the Notice to each Settlement Class Member to explain the terms of the settlement, including the procedures for objecting to or opting out of the settlement (Doc. 55, Ex. A, ¶¶25, 45).   The Settlement Administrator will mail the Notice and the Claim Form via first-class U.S. mail, postage prepaid, and return service requested, to each Settlement Class Member's

---

[4]  The only noted exception is as to the definition of the Settlement Class.  *See supra* note 3.

[5]  The Stipulation of Settlement indicates that the parties retained American Legal Claims Services as the Settlement Administrator and describes the duties of the Settlement Administrator with respect to the administration of the claims in this action (Doc. 55, Ex. A, ¶32).

last known mailing address, as updated by using the U.S. Postal Service's database of verifiable mailing addresses and the National Change-of-Address database, with the Settlement Administrator's mailing address as the return-mail address (Doc. 55, Ex. A, ¶45 & Ex. 1).   Not later than seven calendar days after entry of the Preliminary Approval Order, the Settlement Administrator will also post a website, referenced in the Notice, which will contain information about the settlement, including all relevant dates, pleadings, and a claims portal (Doc. 55, Ex. A, ¶45). The Settlement Administrator will also establish and staff a toll-free telephone line that Settlement Class Members can use to contact the Settlement Administrator with questions regarding the settlement or to change their addresses (Doc. 55, Ex. A, ¶47).   As the Notice complies with the requirements of Rule 23(c)(2)(B) and the method for providing notice to the Settlement Class Members is fair, reasonable, and not unduly burdensome, it is recommended that the Notice and method for providing notice be approved.

### C.    Proposed Schedule and Procedures

Lastly, the parties request that the court schedule a fairness hearing to determine whether to finally approve the Stipulation of Settlement and approve proposed deadlines and procedures for filing claims, opting out, objecting, and for Class Counsel to move for attorney's fees and costs and reimbursement of other costs.   Specifically, the parties request the following deadlines:

| Settlement Administrator mails Notice and sets up Settlement Website | Within 14 days of Preliminary Approval Order |
|---|---|
| Deadline for Motion for Attorney's Fees and Costs and Class Settlement Administration Costs | Within 14 days of Preliminary Approval Order |
| Deadline for Objections | 30 days after Notice is mailed by Settlement Administrator |
| Deadline for Opt Outs (Exclusion Requests) | 60 days after Notice is mailed by Settlement Administrator |
| Deadline for Motion for Final Approval | 21 days before Fairness Hearing |
| Fairness Hearing | Scheduled at court's discretion |
| Deadline for Filing Claim | 60 days after Notice is mailed by Settlement Administrator |

The parties also request that the court approve the procedures pertaining to opting out, objecting, and submitting claim forms, set forth in paragraphs 30, 48, 49 and 50 in the Stipulation of Settlement.  In addition, the parties request that the court approve the procedures for filing a motion for attorney's fees and costs and reimbursement of other incurred costs, set forth in paragraphs 15, 16, 24, 32, 33, 43, and 44 of the Stipulation of Settlement.  After review, such procedures are fair and reasonable and will assist in an orderly administration of the settlement. Accordingly, it is recommended that the schedule and procedures be approved and adopted in preliminarily approving the class settlement.

## IV.    Conclusion

For the foregoing reasons, it is hereby

RECOMMENDED:

1.    Tweedie's Unopposed Motion for Preliminary Approval of Settlement (Doc. 55) be granted.

2.      The Settlement Class be preliminarily approved, as follows:

All individuals as to whom, during the Covered Period, were subject to at least one consumer report (as defined in the FCRA) procured by Defendants (separately or jointly) between May 14, 2017 and June 4, 2020.

3.      Plaintiff Candiss Tweedie be preliminarily appointed as Class Representative.

4.      Attorney Marc Edelman be preliminarily appointed as Class Counsel.

5.      The Notice and method for providing notice to Settlement Class Members be approved.

6.      The proposed schedule and procedures described herein and in the Stipulation of Settlement be approved and adopted.

IT IS SO REPORTED in Tampa, Florida, on this 4th day of May, 2021.

_____

ANTHONY E. PORCELLI
United States Magistrate Judge

## **NOTICE TO PARTIES**

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections.  28 U.S.C. § 636(b)(1)(C).  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  See 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).  **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**


cc:    Hon. Thomas P. Barber
       Counsel of Record