UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CANDISS TWEEDIE, on behalf of
herself and on behalf of all others
similarly situated,

        Plaintiff,

v.                                         Case No. 8:19-cv-1827-AEP

WASTE PRO OF FLORIDA, INC., *et al.*,

        Defendants.
_____/

## **ORDER**

Plaintiff Candiss Tweedie ("Tweedie" or "Plaintiff") brought this action against Defendants Waste Pro of Florida, Inc. ("Waste Pro Florida") and Waste Pro USA, Inc. ("Waste Pro USA") (collectively, "Waste Pro" or "Defendants"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, on behalf of herself and a putative class (Doc. 1). Following preliminary approval of the Class Settlement and notice to the Settlement Class Members, Tweedie now requests final approval of the class action settlement (Doc. 66) and an award of attorneys' fees, costs, and additional compensation (Doc. 61). Defendants do not oppose any of Tweedie's requests. To determine whether the Class Settlement constitutes a fair, reasonable, and adequate resolution for the Settlement Class Members, the undersigned conducted a Fairness Hearing, at which counsel for both parties appeared. After consideration and based upon the representations

made during the Fairness Hearing and in the motions, Tweedie's Amended Unopposed Motion for Final Approval of Class Action Settlement (Doc. 66)[1] is granted, and Tweedie's Unopposed Motion for Attorneys' Fees and Costs and Additional Compensation to Plaintiff (Doc. 61) is granted to the extent set forth herein.[2]

## I.    Background

Tweedie formerly worked for Waste Pro Florida, which provides solid waste collection, recycling, and disposal services to residential and commercial customers in the State of Florida and consists of one of many affiliated entities providing similar services under the "Waste Pro" umbrella in the United States. Waste Pro USA in turn performs administrative services for all the related Waste Pro entities, including procuring background checks and consumer reports on prospective employees, employees, and former employees at all Waste Pro entities. According to Tweedie, Waste Pro USA routinely obtained and used information in consumer reports to conduct background checks on prospective employees, employees, and former employees, including her and the putative class members.

In doing so, Tweedie alleged that Defendants willfully violated the FCRA,

---

[1] The undersigned denied Tweedie's initial motion as moot given the amended motion (Docs. 64 & 67). According to Tweedie, the Amended Unopposed Motion for Final Approval of Class Action Settlement properly identifies the document title in the preamble and attached the updated Declaration of Keith Salhab to reflect the current data received by the Settlement Administrator, American Legal Claims Service ("ALCS" or "Settlement Administrator") (Doc. 66, at 5 n.1).

[2] Following entry of the district judge's Order granting preliminary approval of the class settlement upon recommendation of the undersigned, the parties consented to the undersigned's jurisdiction (Docs. 57, 59, 63, & 65). *See* 28 U.S.C. § 636.

specifically 15 U.S.C. § 1681b(b)(2)(A)(i) and (ii).  Those provisions provide:

**(2)    Disclosure to consumer**

**(A)    In general**

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--

(i)    a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii)    the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A)(i) & (ii) (emphasis in original).  Tweedie asserted that Defendants violated these provisions by procuring consumer reports on her and other putative class members for employment purposes, without first making proper stand-alone disclosures in the required format and without lawful authorization.

Primarily, prior to obtaining a copy of a consumer report for a prospective employee, employee, or former employee, Defendants were required to disclose to prospective employees, employees, and former employees, in a stand-alone document that consisted solely of the disclosure, that they may obtain a consumer report on that prospective employee, employee, or former employee for employment purposes.  Tweedie alleged that the disclosure and authorization form provided by Defendants contained extraneous information, causing confusion, and otherwise distracting from the disclosure.  As a result, Tweedie asserted that

Defendants failed to provide a proper disclosure under the FCRA.  Given the failure

to provide the proper disclosure, Tweedie alleged that Defendants failed to obtain

lawful authorizations from her and other putative class members, further violating

the FCRA.  Tweedie contended that such acts by Defendants constituted willful

acts because (1) Defendants knew they were required to provide a stand-alone

disclosure prior to obtaining and using consumer reports on the putative class

members; (2) Defendants are large and sophisticated employers/entities with access

to legal advice through their own attorneys, with no evidence indicating they

determined that their own conduct was lawful; (3) Defendants knew or had reason

to know that their conduct was inconsistent with published FCRA guidance

interpreting the FCRA, caselaw, and the plain language of the statute; and (4)

Defendants voluntarily ran a risk of violating the law substantially greater than the

risk associated with a reading that was merely careless.

Tweedie initiated this action on behalf of herself and the putative class,

alleging Defendants committed the foregoing violations of the FCRA and thus

seeking an award of statutory damages, attorney's fees, and costs on behalf of herself

and the putative class (Doc. 1).[3]  More specifically, Tweedie asserted claims for (1)

the failure to make proper disclosure in violation of 15 U.S.C. § 1681b(b)(2)(A)(i)

(Count I), and (2) the failure to obtain proper authorization in violation of 15 U.S.C.

§ 1681b(b)(2)(A)(ii) (Count II) (Doc. 1).  Tweedie initially identified a "Background

---

[3]  Tweedie indicates that she originally filed a complaint in state court in May 2019, but, in July 2019, she dismissed the state-court action and initiated the instant action in federal court (Doc. 66, at 2-3).

Check Class" consisting of:

> All employees and job applicants in the United States who were subject of a consumer report obtained for employment purposes by Waste Pro USA, Inc., or its affiliates, who did not receive a lawful disclosure as required by 15 U.S.C. § 1681b(b)(2)(A) within two years of the filing of this complaint through the date of final judgment in this action.

(Doc. 1, ¶¶8, 51).

In response, Defendants moved to dismiss Tweedie's claims (Doc. 9), which the district judge denied (Doc. 28).  Following the denial of Defendants' motion to dismiss, Tweedie moved for class certification (Doc. 38).  The parties then mediated the matter, during which they reached a settlement (Doc. 53) and subsequently entered into the Joint Stipulation of Class Settlement ("Stipulation of Settlement") (Doc. 55, Ex. A).  Accordingly, the parties sought preliminary certification of the class, preliminary approval of the Stipulation of Settlement, approval of the notice to class members, and entry of a schedule of deadlines.  More specifically, pursuant to Rule 23, the parties requested that the Court enter an order (1) preliminarily approving the Stipulation of Settlement that appointed Tweedie as Class Representative and her attorney as Class Counsel; (2) approving the form of Class Notice attached to the Stipulation of Settlement and its dissemination to the Settlement Class by first-class U.S. mail to the last-known address of Settlement Class Members; and (3) setting dates for notice, opt-outs, objections, filing a claim, motions for final approval, and a fairness hearing (Doc. 55).  In pertinent part, and subject to approval by the Court, the Stipulation of Settlement provided for settlement under the following terms:

(1)  Certification of a class consisting of all natural persons residing within the United States and its Territories with respect to whom, within the two years preceding the filing of this action and extending through the resolution of this action, Defendants procured or caused to be procured a consumer report for employment purposes based on the disclosure form used for Plaintiff;

(2)  Defendants agreed to establish a Gross Settlement Fund in the amount of $499,000;

(3)  Every Settlement Class Member who timely submitted a proper claim form would receive a settlement payment of $100, not subject to further reduction unless claims exceeded the amount of the Net Settlement Fund;

(4)  Any unclaimed funds and any uncashed settlement compensation after the expiration of the 60-day period for negotiating checks would automatically revert back to Defendants;

(5)  Payment from the Settlement Fund of an attorney's fees award not to exceed one-third of the Settlement Fund, if approved by the Court, plus reimbursement from the Settlement Fund for litigation-related costs and expenses;

(6)  Payment from the Settlement Fund to Plaintiff a sum of $7,500 as consideration for execution of a General Release of all claims; and

(7)  Notice and administration by a Settlement Administrator deducted from the Settlement Fund.

(Doc. 55, at 2-3 & Ex. A).

After consideration, the undersigned recommended that Tweedie's Unopposed Motion for Preliminary Approval of Settlement be granted, the Settlement Class be preliminarily approved, Tweedie be preliminarily appointed as Class Representative, Attorney Marc Edelman be preliminarily appointed as Class Counsel, the Notice and method for providing notice to Settlement Class Members be approved, and the proposed schedule and procedures described in the Report and

Recommendation and laid out in the Stipulation of Settlement be approved and

adopted (Doc. 57).  Upon recommendation of the undersigned, the district judge

preliminarily approved the Class Settlement with the following primary terms:

> (1)  Certification of a class consisting of all individuals who, during the Covered Period, were subject to at least one consumer report (as defined in the FCRA) procured by Defendants (separately or jointly) between May 14, 2017 and June 4, 2020;[4]
>
> (2)  Establishment of a Gross Settlement Fund in the amount of $499,000;
>
> (3)  Payment of $100 from the Settlement Fund to every Settlement Class Member who timely submitted a claim;
>
> (4)  Payment from the Settlement Fund of an attorney's fees award not to exceed one-third of the Settlement Fund, if approved by the Court, plus reimbursement from the Settlement Fund for litigation-related costs and expenses;
>
> (5)  Payment from the Settlement Fund to Plaintiff a sum of $7,500 as consideration for execution of a General Release of all claims; and
>
> (6)  Notice and administration by a Settlement Administrator deducted from the Settlement Fund.

(Doc. 59 ("Preliminary Approval Order")).

In accordance with the Preliminary Approval Order, the Settlement

Administrator mailed the Class Notice to the 6,419 Settlement Class Members on

---

[4] The definition of the "Settlement Class" in the Notice differed slightly from the definition set forth in the Stipulation of Settlement (*compare* Doc. 55, Ex. A, ¶34, *with* Doc. 55, Ex. A, Ex. 2).  The undersigned recommended that the Notice be amended to comport to the definition of the Settlement Class used in the Preliminary Approval Order, which the undersigned suggested should be that definition agreed upon by the parties, as set forth in the Stipulation of Settlement.  In adopting the Report and Recommendation, the district judge preliminarily approved the foregoing Settlement Class, which included a minor grammatical change in the language of the definition from that set forth in the Stipulation of Settlement (Doc. 59, at 3).

September 7, 2021 via United States Postal Service ("USPS"), with the Class Notice providing the deadlines for submission of claims, requests for exclusion, and objections, among other things (Doc. 66, Ex. 1, Updated Declaration of Keith Salhab as to ALCS Due Diligence in Settlement Administration ("Salhab Decl."), at 2-4). Prior to mailing the Class Notice, the Settlement Administrator checked all mailing addresses against the National Change of Address database maintained by the USPS, certified the addresses via the Coding Accuracy Support System to ensure the quality of the zip code, and verified the addresses through Delivery Point Validation (Salhab Decl., at 2). Of the 6,419 Class Notices mailed, only 200, or a little more than 3%, were deemed undeliverable or for whom no address could be located (Salhab Decl., at 3).

In addition to mailing the Class Notice, the Settlement Administrator established a dedicated toll-free phone number to provide voice-response answers to questions posed by Settlement Class Members (Salhab Decl., at 5). The Settlement Administrator also established a case information website to provide access to view and download the Stipulation of Settlement, Preliminary Approval Order, order extending deadlines to object to attorney's fees, and other documents deemed important by the parties and to allow Settlement Class Members to submit claims electronically, view answers to frequently asked questions, and see key dates relating to the case (Salhab Decl., at 5). The Class Notice fully and accurately informed the Settlement Class Members of all material elements of the proposed settlement and of their opportunity to exclude themselves from, object to, or

comment on the settlement and to appear at the final approval hearing. The Class Notice was thus reasonable and the best notice practicable under the circumstances and complied fully with the requirements of due process, the Federal Rules of Civil Procedure, and all other applicable laws.

Following issuance of the Class Notice to Settlement Class Members and expiration of the objection and exclusion periods, Tweedie now moves, unopposed, for final approval of the Stipulation of Settlement (Doc. 66). Notably, since entry of the Preliminary Approval Order, only three individuals opted to exclude themselves from the Settlement Class, and no objections have been submitted to either the certification of the class or the Stipulation of Settlement (Salhab Decl., at 4). No other change in circumstances has occurred since entry of the Preliminary Approval Order that would alter the prior conclusions regarding certification, so certification of the Settlement Class is warranted for the reasons stated in the Preliminary Approval Order.

In addition to final approval of the Stipulation of Settlement, Tweedie moves for an award of attorneys' fees, costs, and additional compensation for herself (Doc. 61). By the motion, Tweedie seeks an award of attorneys' fees to Class Counsel in the amount of $166,167, or one-third of the Settlement Fund, plus reimbursement for litigation costs in the amount of $3,173.45, with the sum paid from the Settlement Fund. Tweedie also requests that she be awarded $7,500 for executing a general release and for not seeking reemployment with Defendants, with the payment of the additional compensation separate and apart from the Settlement

Fund so as not to reduce distributions to Settlement Class Members.  Defendants do not oppose Tweedie's requested attorneys' fees, costs, or compensation for the general release.

On November 17, 2021, the undersigned conducted a Fairness Hearing to determine whether the Class Settlement represents a fair, reasonable, and adequate result for the Settlement Class Members.  Counsel for Plaintiff and Defendants appeared.  During the hearing, the parties indicated that they received no objections or further opt-outs between the filing of the Amended Motion for Final Approval of Class Action Settlement and the Fairness Hearing, and Class Counsel agreed to waive certain costs incurred in this action.

## II.    Motion for Final Approval of Class Action Settlement

At this juncture, Tweedie seeks final approval of the Stipulation of Settlement.  "Public policy strongly favors the pretrial settlement of class action lawsuits."  *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (citation omitted); *see Jairam v. Colourpop Cosmetics, LLC*, CASE NO. 19-CV-62438-RAR, 2020 WL 5848620, at *3 (S.D. Fla. Oct. 1, 2020) ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements."). Further, courts often accord great weight to the opinions of class counsel in approving class action settlements, with the degree of deference dependent upon the posture of the case and the amount of dissent within the class.  *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1149 (11th Cir. 1983).

Under Rule 23(e), the claims, issues, or defenses of a certified class may be

settled with the court's approval, applying the following procedures:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if the parties show that the court will likely be able to approve the proposal and certify the class for purposes of judgment on the proposal.

> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

> (5) Any class member may object to the proposal if it requires court approval under subdivision (e), and the objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, along with stating with specificity the grounds for the objection.

Fed. R. Civ. P. 23(e)(1)-(5).  Given that the Stipulation of Settlement will bind Settlement Class Members in this instance, the undersigned could only approve it after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;

> (B)  the proposal was negotiated at arm's length;

> (C)  the relief provided for the class is adequate, taking into account:

>> (i)  the costs, risks, and delay of trial and appeal;

>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member

11

claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).   Having previously established that preliminary certification of the Settlement Class and preliminary approval of the Stipulation of Settlement was warranted (*see* Docs. 57 & 59), Tweedie also established that certification of the Settlement Class and final approval of the Stipulation of Settlement is likewise warranted for the same reasons.

Determining the fairness of a class action settlement falls within the discretion of the trial court.  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (citations omitted).  To approve a class action settlement, a district court must determine that the settlement is fair, adequate, and reasonable but also that it is not the result of collusion between the parties.  *Id.* (quotation and citation omitted).  In making such determination, a district court should consider the following factors: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011); *see Bennett*, 737 F.2d at 986  (listing the factors to be considered as (1) the likelihood of success

at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved) (citations omitted). These factors are neither determinative nor exhaustive, and a district court may consider such other relevant factors as (1) an unjustifiably burdensome claims procedure; (2) unduly preferential treatment of the class representative; (3) the terms of settlements in similar cases; (4) an unreasonably high award of attorney's fees to prevailing class counsel; and (5) impermissibly broad releases of liability. *Palmer v. Dynamic Recovery Sol., LLC*, Case No. 6:15-cv-59-Orl-40KRS, 2016 WL 2348704, at *2 (M.D. Fla. May 4, 2016) (citations omitted). Notably, in balancing the factors, courts "may rely upon the judgment of experienced counsel for the parties." *Canupp v. Liberty Behav. Health Corp.*, 417 F. App'x 843, 845 (11th Cir. 2011) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Notwithstanding, "[a]lthough class action settlements should be reviewed with deference to the strong judicial policy favoring settlement, the court must not approve a settlement merely because the parties agree to its terms." *Palmer*, 2016 WL 2348704, at *3 (citations omitted).

As indicated, Tweedie asserts claims for violations of the FCRA for consumer reports obtained by Defendants (Doc. 1). Although Defendants deny any allegations of wrongdoing, liability, and damages, and further deny that litigation would be appropriate for class treatment, Tweedie and Defendants entered into the

Stipulation of Settlement to resolve all claims to avoid the expense, inconvenience, and inherent risk involved with litigation as well as to prevent the continued disruption of Defendants' business operations.  As described above, in effecting this resolution, the Stipulation of Settlement provides for a maximum Settlement Fund of $499,000 intended to be classified as a "qualified settlement fund" under the applicable U.S. Treasury Regulations (Doc. 55, Ex. A, ¶¶37-38).    The Net Settlement Fund consists of the amount of money remaining after the Settlement Fund is reduced to account for the following:

> 1.   Class Settlement Administration Costs approved by the Court, including an amount reserved to complete the Settlement Notice, an amount reserved to complete the Settlement Administration after the initial Settlement Payment checks are distributed, and an amount reserved to complete the Class Action Fairness Act ("CAFA") Notice;

> 2.   Reimbursement to Class Counsel for attorney's fees and incurred costs in an amount up to one-third of the Settlement Fund approved by the Court; and

> 3.   Payment of $7,500 to Plaintiff as consideration for execution of a General Release.

(Doc. 55, Ex. A, ¶24).  Settlement Payments will be issued as individualized awards of $100 from the Net Settlement Fund made to the Settlement Class Members who timely submitted a proper claim and otherwise comply with the terms of the Stipulation of Settlement, with a *pro rata* reduction applied if the number of claims multiplied by $100 exceeded the amount remaining in the Net Settlement Fund (Doc. 55, Ex. A, ¶¶39, 41).[5]  In consideration for the Settlement Payments, the

---

[5]  Given that only 557 valid claims have been submitted, the *pro rata* reduction should not be an issue (*see* Salhab Decl., at 3-4).

Settlement Class Members will release all claims alleged in this action and any known or unknown claims that were or could have been alleged based on the factual and legal theories alleged in the Complaint or that could have been asserted in this action, including all claims under the FCRA (Doc. 55, Ex. A, ¶28).  The amount of any unclaimed funds from the Net Settlement Fund and any uncashed settlement compensation after expiration of the period for negotiating checks used to distribute the Net Settlement Fund will automatically revert to Defendants (Doc. 55, Ex. A, ¶¶40-41).  With respect to fees and costs, Defendants agreed to pay Class Counsel Attorney's Fees and Costs as awarded by the Court, with Class Counsel seeking attorney's fees up to one-third of the Settlement Fund, or $166,167 (Doc. 55, Ex. A, ¶¶40, 43).  Class Settlement Administration Costs will be paid from the Settlement Fund and will include the costs of the Settlement Notice and sending of the notices required under the CAFA, not to exceed $20,000 in total (Doc. 55, Ex. A, ¶16, 44).

Essentially, the parties agreed to a claims-made settlement with full reversion to Defendants with a release of claims tailored solely to the claims addressed in this action.  Such settlements are routinely considered fair, adequate, and reasonable in similar cases.  *See, e.g., Fosbrink v. Area Wide Protective, Inc.*, Case No. 8:17-CV-01154-JSM-CPT, 2019 WL 11097489, at *2 (M.D. Fla. Jan. 22, 2019) (approving a claims-made class settlement awarding class members a gross *pro rata* share of $39 before fees and costs); *cf. Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 696 (S.D. Fla. 2014) ("There is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment.") (internal quotation and citation

omitted). Namely, the settlement appears fair, adequate, and reasonable when compared to other FCRA settlements, both in the total amount in the Settlement Fund, *i.e.* $499,999, and in the amount awarded to each class member, *i.e.*, $100. *See, e.g., Boyd v. Task Mgmt. Staffing Inc.*, Case No. 8:20-cv-780-T-35JSS, 2021 WL 2474433, at *2 (M.D. Fla. Apr. 30, 2021) (finding a net payment of $34.55 to each settlement class member in a settlement in a FCRA class action case fair and reasonable); *Gross v. Advanced Disposal Servs., Inc.*, Case No. 8:17-cv-1920-CEH-TGW (M.D. Fla. Feb. 26, 2020) (Doc. 102, ¶10) (finding payments of $90 to class members fair and reasonable in a case involving FCRA claims relating to employment background checks); *Dukes v. Air Canada*, Case No. 8:18-cv-2176-T-60JSS, 2020 WL 487152, at *5 (M.D. Fla. Jan. 27, 2020), *report and recommendation adopted*, 2020 WL 496144 (M.D. Fla. Jan. 30, 2020) (approving a class action settlement with a common fund of $100,000 and a payment of $41.61 to class members after administration expenses and attorney's fees in a case involving FCRA claims); *Fosbrink*, 2019 WL 11097489, at *2 (finding a gross *pro rata* share of $39 per class member, before class counsel's attorney's fees and costs, settlement administration costs, and service award to the plaintiff, to be fair and reasonable in a case involving FCRA claims relating to employment background checks). Further, the amounts fall within the range of possible recovery, which also weighs in favor of finding the Stipulation of Settlement fair, adequate, and reasonable. *See Edwards v. Horizon Staffing, Inc.*, 1:13-cv-3002-WSD, 2015 WL 13283397, at *7 (N.D. Ga. Jan. 2, 2015) ("The range of possible recovery for Defendant's allegedly

willful FCRA violations is $100 to $1,000.") (citing 15 U.S.C. § 1681n).

As to the other factors, the parties agree that they each seek to avoid the complexity, expense, and duration of litigation and the appellate process anticipated in this action. Indeed, the parties could reasonably anticipate great expense to each if they are forced to litigate the issues present in this action, as Defendants deny liability or wrongdoing and dispute the issue of willfulness. The Settlement Class Members also benefit from the potential receipt of a monetary payment without the expense and risks associated with litigation, including the risk of a smaller or no award. Furthermore, uncertainty remains on both sides as to whether the claims upon which Tweedie seeks to proceed are likely to succeed at trial. Tweedie and Defendants possess colorable arguments in support of and in opposition to the claims in this action, which makes settlement an attractive option for each. Regarding the stage at which the settlement was reached, the Stipulation of Settlement was entered into after the submission and resolution of a motion to dismiss, the exchange of discovery, multiple depositions, and the submission of a motion for class certification, so the parties both expended great time and effort before reaching a resolution. Each side entered the negotiations with a full understanding of the issues and potential pitfalls related to litigation of the claims and engaged in arm's-length negotiations before a court-approved mediator, thereby demonstrating that the settlement was not the product of fraud or collusion. The timing of the settlement and the circumstances surrounding the settlement therefore do not weigh against approval.

Moreover, trying this case would be lengthy, expensive, and could result in appeals.  The parties were well-positioned to assess the strengths and weaknesses of this case and the benefits of the proposed settlement.   Considerations of the complexity, expense, and duration of the litigation, when viewed in context with the stage at which settlement was achieved, supports approval of the Stipulation of Settlement. In so finding, the undersigned considered all evidence presented, including evidence regarding the strength of the Plaintiff's case; the risk, expense, and complexity of the claims presented; the likely duration of further litigation; the amount offered in the Stipulation of Settlement; the extent of investigation and discovery completed; and the experience and views of Plaintiff's counsel. Additionally, the Stipulation of Settlement did not delineate an unjustifiably burdensome claims procedure or unduly preferential treatment of Tweedie as Class Representative.   Though Tweedie will receive compensation for executing a General Release in exchange for not seeking further employment with Defendants, the undersigned does not find such compensation at odds with the interests of Settlement Class Members nor classifies it as unduly preferential to Tweedie.

With respect to the factor pertaining to the opposition to the settlement, no such opposition currently exists.  As noted, in accordance with the Preliminary Approval Order, the Class Notice was sent to the 6,419 Settlement Class Members, with only 200 deemed undeliverable or for whom no address could be located as of November 12, 2021 (Salhab Decl., at 2-3).  Following issuance of the Class Notice, the Settlement Administrator received 557 valid claims (Salhab Decl., at 4).

Additionally, the Settlement Administrator received only three Requests for Exclusion, in which Settlement Class Members submitted a written statement requesting exclusion from the Settlement Class in accordance with the Preliminary Approval Order (Salhab Decl., at 4). Importantly, the Class Notice also informed Settlement Class Members that they could object to the Stipulation of Settlement, and, as of November 12, 2021, the Settlement Administrator was not aware of any objections to the Stipulation of Settlement (Salhab Decl., at 4). The factor pertaining to opposition to the settlement thus also weighs in favor of final approval. Based on the foregoing factors, final approval of the Stipulation of Settlement is appropriate.

### III.    Motion for Attorneys' Fees and Costs and Additional Compensation to Plaintiff

Tweedie also moves for an award of attorneys' fees, costs, and additional compensation to Plaintiff (Doc. 61). In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). Defendants do not oppose Tweedie's requests, and no Settlement Class Members objected, despite receiving notice of the proposed payment.

### A.    Attorneys' Fees

Notwithstanding the lack of opposition, courts maintain an independent duty to assess the reasonableness of an award of attorneys' fees under a settlement of a class action. *See, e.g., Kuhr v. Mayo Clinic Jacksonville*, 530 F. Supp. 3d 1102, 1118 (M.D. Fla. 2021) (citations omitted) (indicating that the court maintains an

independent responsibility to assess the reasonableness of attorneys' fees proposed under a settlement of a class action, that such duty applies regardless of whether the fees are paid from a common fund settlement or otherwise, and that, even in the absence of objections, the court bears the responsibility to ensure that the amount and mode of payment of attorney's fees are fair and proper) (citation omitted); *Dunn v. Dunn*, 318 F.R.D. 652, 681 (M.D. Ala. 2016), *modified*, *Braggs v. Dunn*, CIVIL ACTION NO. 2:14CV601-MHT, 2020 WL 2395987 (M.D. Ala. May 12, 2020) ("Even when both parties agree to an award [of attorneys' fees for a class settlement], the court has an independent responsibility to assess its reasonableness, in order to guard against the risk that the class counsel might agree to enter into a settlement less favorable to their clients in exchange for inappropriately high fees."); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 673 (N.D. Tex. 2010), *quoting In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008) ("'In a class action settlement, the district court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that the attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel.'").   In the Eleventh Circuit, courts should base attorneys' fees awarded from a common fund upon a reasonable percentage of the fund established for the benefit of the class. *Camden I Condo Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).   "In considering a fee award in the class action context, the district court has a significant supervisory role."  *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999).   No hard and fast rule mandates that a certain percentage of a common

fund may be reasonably awarded as a fee because the amount of any fee must be determined by the court based upon the facts of each case. *Camden I*, 946 F.2d at 774. In *Camden I*, the Eleventh Circuit acknowledged that most common fund fee awards fall between 20% to 30% of the fund, with an award of 25% of the fund established as a benchmark and an award of 50% of the fund suggested as an upper limit. *Id.* at 774-75. At the same time, the Eleventh Circuit suggested that several factors, including those set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),[6] will impact the appropriate percentage to be awarded as a fee in any case and will undoubtedly vary but may be considered in evaluating, setting, and reviewing percentage fee awards in common fund cases, along with other factors, such as the time required to reach a settlement, whether class members or other parties lodged objections to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action. *Camden I*, 946 F.2d at 775.

Here, Tweedie requests an award of fees in the amount of $166,167, or one-third of the Settlement Fund. Such request falls within the parameters of reasonable awards of attorney's fees in class action cases involving a common fund. Indeed,

---

[6] These factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

21

in this context, courts generally consider fee requests reasonable where the requests fall between 20% to 33.3% of the fund. *See Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 435 (11th Cir. 2012) (affirming district court and finding reasonable a fee award that constituted 25% of a common fund); *Waters*, 190 F. 3d 1292-98 (affirming district court's award of one third of the settlement fund as attorney's fees); *Boyd*, 2021 WL 2474433, at *2 (awarding class counsel one-third of the total fund in a case involving a FCRA class action settlement); *Smith v. KFORCE Inc.*, Case No. 8:19-cv-02068-CEH-CPT, 2020 WL 7250603, at *2 (M.D. Fla. Dec. 9, 2020) (finding that one-third of the common fund, for which the class counsel would seek approval, was within the reasonable range for attorney's fees and costs upon consideration of preliminary approval of a class action settlement); *Edwards*, 2015 WL 13283397, at *7-11 (awarding 30% of the settlement funds for attorney's fees and costs as a reduction from the 37% requested and finding that 25% represents more of the normal percentage in a case involving settlement of FCRA class claims); *Atkinson v. Wal-Mart Stores, Inc.*, No. 8:08-CV-691-T-30TBM, 2011 WL 6846747, at *6-7 (M.D. Fla. Dec. 29, 2011) (finding an award of one-third of a common fund within the range common for class action fee and costs awards); *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1359 (S.D. Fla. 2011) (awarding 30% of a common fund). The request for reimbursement of attorney's fees in the amount of one-third of the Settlement Fund for is thus fair, adequate, and reasonable compared to customary fee awards in this context.

Several other factors also support the finding that the award of attorney's fees

in the amount of one-third of the Settlement Fund is fair, adequate, and reasonable in this instance. Most significantly, no Settlement Class Members objected to the settlement terms or the fees requested by Class Counsel. Further, the time and labor already required over the course of the past two years, and the time and labor still required to bring this case to conclusion, warrants an award of attorney's fees in the amount of one-third of the Settlement Fund. Namely, during the pendency of the litigation, Class Counsel drafted and filed the complaint, responded to a motion to dismiss, exchanged discovery with Defendants, engaged in third-party discovery, reviewed and analyzed discovery responses and class-related information provided by Defendants, deposed witnesses, prepared and submitted an initial motion for class certification, and prepared for and engaged in a full day of mediation, which led to the parties reaching an agreement in principle. Class Counsel then submitted the Unopposed Motion for Preliminary Approval of Settlement, which the district judge approved upon recommendation by the undersigned. Upon preliminary approval, Class Counsel drafted class notices, facilitated notices and class administration, and responded to inquiries submitted by Settlement Class Members. Class Counsel subsequently prepared and submitted both the Amended Unopposed Motion for Final Approval of Class Action Settlement and the Unopposed Motion for Attorneys' Fees and Costs and Additional Compensation to Plaintiff and attended the Fairness Hearing. Following final approval, Class Counsel will continue to represent the Settlement Class by monitoring the settlement to ensure that Settlement Class Members receive their settlement checks or replacement

checks and by responding to any further inquiries submitted by Settlement Class Members.

Moreover, at all phases of the litigation, Class Counsel demonstrated the skill and expertise necessary to move the litigation along and to secure a favorable outcome for the Settlement Class Members, especially given the issues presented, including Defendants' willfulness defense.   Class Counsel's experience and reputation in effectively handling complex litigation certainly served the Settlement Class and assisted the Court in moving this case to conclusion (*see* Doc. 61, Ex. A, Declaration of Marc R. Edelman ("Edelman Decl.")).   Since the time to reach a settlement extended beyond the filing of the complaint and occurred following motion practice and discovery, such expertise and skill combined with the time and labor required supports Class Counsel's attorney's fees request.

Additionally, Class Counsel took the case on a contingency basis.   A contingency fee arrangement can justify an award of attorney's fees because very few lawyers can represent a class client due to the investment of substantial time, effort, and money, especially given the risks of potentially recovering nothing.   *See, generally, Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988).   Such was the case with Class Counsel, who took the case with no guarantee of recovery, no assurance that the class would be certified, and no clarity as to whether Tweedie could overcome potential defenses, which also goes to the undesirability of taking on this FCRA class action.   Class Counsel has not received reimbursement for the time or costs already expended on this action due to the contingent nature of the fee

arrangement.  Similarly, Class Counsel was limited in the ability to undertake other employment or devote time to other matters due to the hours required to prosecute this action over the course of two years.  Those factors likewise support the requested attorney's fees.

Finally, the amount at issue in the case and the results obtained weigh in favor of awarding Class Counsel the requested attorney's fees.  Against a backdrop of uncertainty and considering the issues and complexities involved in this case, Class Counsel secured a $499,000 Settlement Fund on behalf of the Settlement Class Members with $100 awards going to each Settlement Class Member who filed a valid claim.  As discussed more fully above, both the amount in the Settlement Fund and the individual awards to Settlement Class Members compare favorably to other FCRA class action settlements.  For the foregoing reasons, therefore, Class Counsel is awarded attorney's fees in the amount of $166,167, or one-third of the Settlement Fund.

### B.    Costs

Though Tweedie provided no legal support for her request for an award of costs (Doc. 61, at 20), Tweedie seeks reimbursement of litigation costs and expenses in the amount of $3,173.45, which Defendants do not oppose.  Primarily, Tweedie seeks reimbursement for the following: (1) filing fees in the amount of $400; (2) service of process fees in the amount of $240; (3) deposition transcript fees in the amount of $1,435.90; (4) administrative fees in the amount of $165; (5) travel expenses in the amount of $96.30; and (6) printing and copying fees in the amount

of $836.25 (Edelman Decl., ¶9 & Ex. 1).    Courts may award the following costs under 28 U.S.C. § 1920:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Pursuant to 28 U.S.C. § 1920(1), a filing fee and service of process fees constitute taxable costs.  *See U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000) (holding that private process server fees may be taxed pursuant to 28 U.S.C. § 1920(1) so long as such fees do not exceed the statutory fees authorized in 28 U.S.C. § 1921); *see Family Oriented Cmty. United Strong, Inc. v. Lockheed Martin Corp.*, No. 8:11-cv-217-T-30AEP, 2012 WL 6575348, at *1 (M.D. Fla. Dec. 17, 2012) (finding that "[f]ees of the clerk and marshal include filing fees and are clearly taxable").  Here, Tweedie paid $400 for the filing file to initiate this action (Doc. 1; Edelman Decl., Ex. 1, at 5).  As such fees are warranted under 28 U.S.C. § 1920, Tweedie is awarded $400 in costs for the filing fee.

Tweedie also seeks reimbursement for fees for service of process.  Namely, Tweedie seeks reimbursement service of process fees in the amount of $240 as

26

follows: (1) $65 for service of process on Waste Pro USA; (2) $65 for service of process on Waste Pro Florida; and (3) $110 for service of process of a subpoena (Edelman Decl., Ex. 1, at 6-8).  Under 28 U.S.C. § 1921, the United States marshals may tax as costs fees for service of a summons or complaint.  28 U.S.C. § 1921(a)(1)(A).  The fee for process served or executed personally is $65 per hour. 28 C.F.R. § 0.114(a)(3).  The fee for service of process upon Waste Pro USA and Waste Pro Florida requested by Plaintiff in the amount of $65 is thus reasonable as it does not exceed the authorized statutory fee.  The request for fees in the amount of $110 for service of a subpoena is not reasonable as it exceeds the authorized statutory fee and therefore is reduced to $65 to bring the fee in line with the statutory fee.  Accordingly, the amount awarded for service of process fees is reduced from $240 to $195, or $65 each.

As to the fees associated with the deposition transcripts, taxation of deposition costs is authorized under 28 U.S.C. § 1920(2).  *W&O, Inc.*, 213 F.3d at 620.  The determination whether the costs for a deposition are taxable turns on the question of whether the deposition was wholly or partially necessarily obtained for use in the case.  *Id.* at 620-21.  If a party incurs deposition costs merely "for convenience, to aid in thorough preparation, or for purposes of investigation only," such costs are not recoverable.  *Id.* at 620 (citation and internal quotation marks omitted).  Here, Tweedie seeks reimbursement for deposition transcript fees in the amount of $1,435.90 for the depositions of Tweedie and the corporate representatives of Waste Pro Florida and Waste Pro USA (Edelman Decl., at 3 &

Ex. 1, at 9-11).  Such costs are warranted and shall be awarded.

Tweedie also seeks reimbursement for $836.25 in costs for printing and copying (Edelman Decl., at 3 & Ex. 1, at 1-4).  As 28 U.S.C. § 1920(4) authorizes reimbursement for fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case, such costs are appropriate.  Accordingly, Tweedie shall be awarded costs in the amount of $836.25 for printing and copying.

Lastly with respect to costs, Tweedie seeks reimbursement for $165 for administrative costs and $96.30 for travel expenses.  Having provided no authority for such costs, the undersigned inquired during the Fairness Hearing about the basis for such an award.  At that time, Tweedie indicated that she would waive any claim to such costs and expenses.  Accordingly, such costs and expenses will not be awarded.  In sum, therefore, Tweedie is awarded costs in the amount of $2,867.15.

## C.    Additional Compensation

Finally, Tweedie seeks an award of $7,500 in additional compensation as consideration for the execution of a General Release waiving of all claims against Defendants and an agreement that Tweedie will not be rehired.  The undersigned does not find such provision at odds with the interests of the Settlement Class, especially since the compensation does not affect the amount of money available to Settlement Class Members (Doc. 61, at 4; Doc. 66).  Notably, and as previously articulated in the undersigned's Report and Recommendation (*see* Doc 57, at 15 n.2), the Eleventh Circuit recently determined that "incentive awards" for class

representatives equate to part salary and part bounty, which is prohibited by prior Supreme Court precedent. *Johnson v. NPAS Sol., LLC*, 975 F.3d 1244, 1255-61 (11th Cir. 2020). Whether the additional compensation to Tweedie for the General Release constitutes a thinly veiled attempt at an incentive award certainly presents a concern for the undersigned. Notwithstanding such concern, the undersigned does not see any issues on these facts that would warrant denial of the request for the additional compensation. Given that this matter arises in the employment context and that the parties could have independently negotiated the General Release regarding any employment claims and potential request to rehire that Tweedie maintained separate and apart from the FCRA claims at issue for the Settlement Class, the undersigned approves the $7,500 payment to Tweedie as consideration for execution of the General Release and agreement not to seek re-employment with Defendants.

## IV.   Conclusion

For the foregoing reasons, it is hereby

ORDERED:

1.     Tweedie's Amended Unopposed Motion for Final Approval of Class Action Settlement (Doc. 66) is GRANTED, with the following directives:

a.     The Stipulation of Settlement is not an admission by Defendants or by any other released party, nor is this Order a finding of the validity of any allegations or of any wrongdoing by Defendants or any other released party. Neither this Order, the Stipulation of Settlement, nor any document referred to

herein, nor any action taken to carry out the Stipulation of Settlement, may be construed as, or may be used as, an admission of any fault, wrongdoing, omission, concession, or liability whatsoever by or against Defendants or any of the released parties.

b.     All Settlement Class Members are bound by this Final Approval Order and by the terms of the Parties' Stipulation of Settlement, including releases provided for in the Stipulation of Settlement.  As of the effective date of the Stipulation of Settlement, by operation of the entry of this Final Approval Order, each Settlement Class Member, including Tweedie, shall be deemed to have fully released, waived, relinquished, and discharged, to the fullest extent permitted by law, all released claims that he or she may have against the released parties.

c.     Members of the Settlement Class were provided sufficient notice. Those who did not timely and properly opt out of the settlement are bound by this Order.  Those who timely and properly opted out are not bound by this Order.

d.     The undersigned considered all relevant factors for approving a class action settlement and concluded that all such factors weigh in favor of granting final approval.

e.     The terms of the Stipulation of Settlement are in all respects fair, adequate, and reasonable.

f.     The payments to Settlement Class Members of One Hundred Dollars ($100) are fair and reasonable considering all the circumstances.  The parties

agreed to a claims-made settlement structure, requiring class members to submit claims forms to receive their award.  Each Settlement Class Member who submitted a valid claim postmarked prior to the claim deadline will receive a significant monetary benefit in line with or above awards in similar cases.  This constitutes a very good outcome for the Settlement Class Members.  Accordingly, payments shall be made and administered in accordance with the terms of the Stipulation of Settlement and this Order.

g.     The services provided by the Settlement Administrator were for the benefit of the Settlement Class, and the actual cost of no more than $20,000 is fair, reasonable, and appropriate for reimbursement.   The Court approves payment of actual costs up to $20,000 for administration fees, which includes all costs and fees incurred to date, as well as estimated costs and fees involved in completing the administration of the settlement.

h.     Attorney Marc R. Edelman of the law firm Morgan & Morgan, P.A. is confirmed as Class Counsel in this action, as he demonstrated sufficient experience, knowledge, and skill to promote and safeguard the interests of the Settlement Class.

i.     Tweedie is a suitable representative for the Settlement Class, and her appointment as the Class Representative is confirmed.   Tweedie's commitment to the litigation and its outcome ensured adequate advocacy for the Settlement Class, and her interests are aligned with those of the Settlement Class.

j.     No later than ten (10) days after the entry of this Order,

Defendants will deposit 100% of the full Settlement Fund with the Settlement Administrator.

k.      No later than seven (7) days following receipt of the Settlement Fund, the Settlement Administrator will pay the Class Representative's additional compensation and Class Counsel's award of fees and costs.  Within seven (7) days of receipt of the Settlement Fund, the Class Administrator shall calculate the actual cost of no more than $20,000 for administration fees, which includes all costs and fees incurred to date, as well as estimated costs and fees involved in completing the administration of the settlement.

l.      No later than seven (7) days following receipt of the Settlement Fund, the Settlement Administrator shall mail checks to Class Members who timely submitted claims.  The checks shall be negotiable for 60 days and mailed in accordance with the Stipulation of Settlement.

m.      In accordance with the terms of the Stipulation of Settlement, the Settlement Administrator shall calculate the amount of any unclaimed funds in the Net Settlement Fund, and all remaining funds, including any issued checks that were not deposited within sixty (60) days of the issuance of the check, shall automatically revert to Defendants.

n.      Without affecting the finality of this Order or the judgment in any way, the undersigned retains continuing jurisdiction over the interpretation, implementation, and enforcement of the Stipulation of Settlement, including the claims process established therein.

o.      If the Stipulation of Settlement does not become final and effective in accordance with its terms, any orders entered in connection with it shall be rendered null and void and shall be vacated.

2.      Tweedie's Unopposed Motion for Attorneys' Fees and Costs and Additional Compensation to Plaintiff (Doc. 61) is GRANTED as follows:

a.      Tweedie is awarded attorneys' fees in the amount of $166,167;

b.      Tweedie is awarded costs in the amount of $2,867.15; and

c.      Tweedie is awarded compensation in the amount of $7,500 in consideration for execution of the General Release and agreement not to seek re-employment with Defendants.

DONE AND ORDERED in Tampa, Florida, on this 9th day of December, 2021.

ANTHONY E. PORCELLI
United States Magistrate Judge


cc:     Counsel of Record